The next case on the calendar is Jackson v. New York City Department of Education. May it please the court, my name is Andrea Rizzoli for appellant Phoebe Jackson. I would ask two minutes for rebuttal if necessary. This is a case dismissing on summary judgment due to the district court in our position erroneously dismissing because there were several significant questions of fact that were presented that a reasonable jury would be able to resolve the issues. It's under the Americans with Disabilities Act and also an employment discrimination claim that Ms. Jackson's civil rights were violated. She has cerebral palsy. She asked for specific reasonable accommodations that were not given to her. She was blatantly discriminated against. What were the accommodations that she asked for? So she got one that was an elderly woman that had less ambulation than she had and then she asked for a second one because under the law she's supposed to have one to assist her and one to assist the classroom to control the classroom. Because she can't move around a lot, sometimes the children get rambunctious and that other paraprofessional or para is supposed to help with the children. Then when she expressed her concern to the principal who we're alleging discriminated under the Disabilities Act that she gave her a gentleman who was a nice strong strapping gentleman and he worked in the school and what the principal did was take him out of the classroom intermittently when she needed him to do odd jobs around the school. Initially the accommodation request was satisfied. It was satisfied but not adequate is our contention because they were pulled in and out of the classroom which caused problems in the classroom because my client couldn't move around a lot. She also asked for accommodations to be put in a lower grade pre-k and kindergarten because those children are easier to control and she did well in those classrooms. According to the school policy you could ask for a preference without a reasonable accommodation and you would get it like every third year. There is no allegation in any of those things that any of that had anything to do with her disability. In the end whether one does it at the prima facie case or whether one looks at it at the time the explanation for everything that was done, everything that was done seems to have nothing to do with what is a real disability. It has to do with whether she had migraines with all sorts of things which were not disabilities under the act. I've kept trying to find a serious link. Her disability is that she couldn't move around. She needed these people to help control the classroom because it was the essence of her disability that impeded her otherwise qualified position. She's a tenured teacher in this school. She still is. There's a new principal and she's had no problems. The new principal has abided by giving her the two paras, giving her the lower grades and she hasn't had a problem since. Those accommodations she needed to perform her job duties adequately in the mainstream. The other thing was the higher grades are up on different floors. The higher the grade the more the staircase and she couldn't make the staircase. She asked to- Wasn't she allowed to use the elevator? She was and half the time the elevator was broken. So then she would have to go up to the steps. If she was late because she had to walk up the steps and fight the other students- Was there any suggestion that the broken elevator was done for anything because of her or was this a reasonable accommodation? You use the elevator and sometimes elevators are broken. The elevator here of a 26th floor- Do you have to walk up 26 floors? Oh, no. I'm saying that you have a disability and you have a person asking to use the elevator. That elevator should have been in working order. I mean it's just a combination of all the accommodations. It can't be looked at in a vacuum. And then, yes, there were a couple of incidents in the classroom because she couldn't do it on her own. And then when- How is what she was charged with doing, with leaving a child there or doing things, have anything to do with her disability? Because she did not have the accommodation. The underlying reason why is the question of fact that we are saying that was established among other questions of fact. But I will tell you- How about for the 2011 evaluation, there were letters from a school administrator about a lack of lesson plans? Yes, that was the same principal that we're alleging has been discriminating against her and her assistant principal. And they say they didn't even go into the classroom to evaluate her as far as I understand it. What happened- Her testimony, her deposition testimony as I understand it, acknowledged that there had been a problem. There was a problem. The other- I mean, the best I could understand it is when they were discussing the lesson plan, this principal and this assistant principal went through the power of professionals and communicated with them and did not communicate with the actual teacher in the classroom, which was my client. That's the best way I can understand it. Basically, every time she was five minutes late because she couldn't walk properly like everyone else, she was marked tardy. If she made it, she has various medical appointments. She didn't ask for extra sick days or anything, but if the doctor appointments were made on a Friday or a Monday, she was accused of trying to take a long weekend. It's not the one thing. It's the whole umbrella that can't be looked at in a vacuum, and that's where we allege there's many questions of facts here. May it please the Court, Janet Zalian for the DOE. The Court has expressed understanding through its questioning that the circumstances that are alleged by the plaintiff are not related to her disability, whether you want to say that it doesn't make out a prima facie case because there was no adverse employment action or because there was no inference of discrimination or because the DOE's proffered legitimate reasons for all these circumstances that are not pretextual. It's hard to say. I know the Court below went on no adverse actions, but it's hard to say that lower ratings and even on our cases, which are more favorable than many circuits, that reassigning to a different class is not an adverse action, but the other two grounds you have are very, very strong. Yes. The reassignment to teach first or second grade followed the serious safety incident in which a child was sent home with the wrong caretaker, and that's an administrator's worst nightmare about what might have happened. And is your suggestion that reassignment to an earlier, to a higher class, is an appropriate response to what was done with a very young child who couldn't really take care of? And then a couple of years later, a similar thing happened where a child was left unattended, a small child. The teaching deficits that were noted included things like lesson planning, which is not just attributable to the lack of a para in the classroom at the time of the observation, because that has to do with the plaintiff's pedagogy. That included a period of time during which there was a para, right? And there was a para. Yes. And also, it's important to remember here that there is no counter 56.1 statement in this record or evidence to support allegations like intermittent use of the para. She received a para every time since she first requested one. Notably, the principal granted her tenure after that first request for a para, because it was during her probationary period. So the same person hired her, granted her tenure, did make accommodations. At one point, mistakenly thought that she had to reapply for a para. That was not true. So she was getting the para. She moved the classroom down to a lower floor when the plaintiff was assigned to teach second grade and allowed her to use the elevator, and it is true, elevators do break, and allowed a para to escort the children on the staircase so that she would not have to try to control the class on the staircase. The principal wasn't perhaps a pleasant person for her to deal with as a new teacher starting out in her first assignment, but the principal did not discriminate based on her disability. All these actions are legitimate teaching-related and safety-related actions. And does the Court have any more questions? Thank you, Your Honors. Just a few minor points, well, major points. The two incidents with the young children was one that a grandmother came to take her grandchild and the friend home, and the grandmother picked out this student who was not the right student. And yes, my client let the grandmother take that student. And the second one was a little boy who always had the tendency to hide in a closet at lunchtime. Did so, but there was another, and they did head counts on the way out, and that a new student was added to the classroom, so the head count was... I mean, look, I'm very empathetic to the client, but you did not file a counter-statement under 56.1. Is that correct? No, we did not. Why not? Okay, well, there was a lot of limited resources here. We prioritized, and we did the best we could with what we had, and so we just made a judgment call. The current situation is that your client is employed, and as you said, there is a principal whom she gets along with. And it's not just get along. She's had all satisfactory exemplary evaluations since then. Yes, she was not discharged because she had tenure, but what did happen was her salary was frozen, and she has emotional issues because of it. I understand that you're making claims for damages. Right, okay. And if you don't have any more questions, I will. It's been a long day for you, and I appreciate it. Thank you. Thank you very much. We'll take it on submission, I mean under advisement.